UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HARRY PARTRIDGE,

      Plaintiff,

v.                       Case No. 8:15-cv-936-T-33JSS

MOSLEY MOTEL OF SAINT PETERSBURG
INC., a Florida corporation,
AFFORDABLE REALTY AND PROPERTY
MANAGEMENT, INC., a Florida
corporation, and AL KADURY
individually,

      Defendants.
_____/

## ORDER

This matter is before the Court pursuant to Defendant
Affordable Realty and Property Management, Inc.'s Motion for
Summary Judgment (Doc. # 44), filed on October 30, 2015,
Defendants Al Kadury and Mosley Motel of Saint Petersburg,
Inc.'s Motion for Summary Judgment (Doc. # 46), filed on
October 31, 2015, and Plaintiff Harry Partridge's Motion for
Partial Summary Judgment (Doc. # 48), filed on November 2,
2015. All three Motions became ripe on November 19, 2015.

For the reasons that follow, the Court denies Affordable
Realty's Motion (Doc. # 44), denies Kadury and Mosley Motel's
Motion (Doc. # 46), and grants Partridge's Motion (Doc. # 48).

**I.**   **Background**

Mosley Motel is an extended stay motel located in
Pinellas County, Florida, with approximately 107 rooms for
rent. (Doc. # 33 at ¶ 8; Kadury Dep. Doc. # 47-1 at 10).  Al

Kadury started out at Mosley Motel as "head of maintenance" and worked his way up to holding the position of "manager" of the Motel. (Kadury Dep. Doc. # 47-1 at 3-5).  He has served in that role at Mosley Motel for approximately four years. (Id. at 4).  Kadury is typically present at Mosley Motel, Monday through Friday and on weekends, as needed. (Id. at 6-7).  As the manager, Kadury supervises the office employees, maintenance men, groundsmen, and the housekeeper. (Id. at 31). Kadury hires and fires workers for the Mosley Motel. (Id. at 31). Kadury is responsible for payroll and is paid a salary of $500 per week. (Id. at 7, 33, 56). Kaudry testified that he employed his daughter as well and paid her "way more" than the other employees "because she's my daughter." (Id. at 37).

The Mosley Motel has a debit card machine and accepts cash, credit cards, and checks. (Id. at 25). There are two front desk Motel workers who use the telephone, fax machine, and Internet. (Id. at 26).  Kadury testified that room reservations may be made by downloading a form from the Internet and faxing it to the Motel. (Id.).  The Motel has a website as well as a cellular telephone. (Id. at 26-27).

Harry Partridge, a self-taught handyman with a tenth grade education, was a guest at Mosley Motel with his wife and three young children. (Partridge Dep. Doc. # 45-1 at 11-12; Kadury Dep. Doc. # 47-1 at 43-44). As described by Kadury:

2

> Harry was a guest with his wife and three children . . . and they were there for a week. I think some organization put them here. I think the outreach for homeless or somebody put them in the motel for a week, they paid for them.
>
> And I really liked the kids so when I saw them checking out with all their stuff walking I asked one of the people and they said, oh, they have no where to go. So I felt bad and I sent someone to call them. They were already half way down the street and I told them to stay. . . . I said, go ahead and stay for the week and I'll take care of it. I don't want you going on the street with the kids and we'll figure out what we're going to do.

(Kadury Dep. Doc. # 47-1 at 45).

After some discussions, Partridge became employed as a maintenance man at the Mosley Motel. (Id. at 47). There was no written contract regarding the work relationship. (Id. at 49). In fact, Partridge testified that there was never even an oral agreement regarding the amount Partridge would be paid for his hours worked. (Partridge Dep. Doc. # 45-1 at 21). Partridge explained that he was initially paid $100 in cash per week and was allowed to stay in a one-room motel unit with his family free of charge as a part of his compensation. (Id. at 16, 27, 63).[1] Partridge held this position from November of 2012, through April of 2014. (Id. at 31). During this time, he was given a raise to $125, and then to $150 per week. (Id. at 52-54).

_____

[1] Partridge explained that, prior to being hired by Mosley Motel, he paid $265 per week for the motel room, which was the customary rate. (Id. at 13).

As a maintenance man, Partridge completed numerous and varied tasks.  For the first two months of his employment, he worked alongside Richard Petry, a long-time employee of the Motel. (Id. at 23).  Thereafter, at Kadury's direction, Petry became a security guard and Partridge "pick[ed] up" Petry's duties. (Id. at 29).

Partridge learned of the tasks that he was required to perform by checking a maintenance log as well as a schedule posted at the Motel's front desk. (Id. at 22, 44).  In addition, Kadury contacted Partridge by phone and by radio with tasks and directions. (Id. at 23).  Partridge also explained that guests of the Motel would just come to his room with requests for assistance. (Id. at 36).

Kadury testified that the Motel had problems with roaches, spiders, wasps, and bed bugs. (Kadury Dep. Doc. # 47-1 at 59).  As a maintenance man, Partridge helped Motel guests relocate when their rooms were infested with bed bugs. (Partridge Dep. Doc. # 45-1 at 56).  Partridge also testified that he helped guests that were locked out of their rooms, fixed leaking toilets, helped guests with issues with their in-room televisions, dealt with major water leaks, removed faulty air conditioning units, cleaned pool filters, pressure washed the grounds, and performed many other miscellaneous tasks. (Id. at 56-58).  Partridge also stated in a declaration

4

that "While I was working at the Mosley Motel, I was instructed by Al Kadury numerous times to perform work at a warehouse that was owned by Affordable Realty and Property Management." (Partridge Decl. Doc. # 51-1 at ¶ 10).

Partridge indicated that Kadury warned him to always stay busy or he would not be paid. (Partridge Dep. Doc. # 45-1 at 27). As such, when there were no maintenance items listed on the maintenance log for Partridge to perform, he would help the housekeeper perform general cleaning tasks, such as sweeping, or he would put on a security jacket and perform the function of a security guard. (Id. at 25-27, 58). Partridge testified that he owns some tools, but that he did not use his own tools (with the exception of his own drill) to complete work for the Motel. (Id. at 58-59). Partridge did not complete tasks that required specialized skills or a license. For instance, Kadury or Partridge called plumbers, air conditioner technicians, and other specialists when a higher level of skill was needed. (Kadury Dep. Doc. # 47-1 at 58).

Partridge described working overtime hours and testified that he kept a journal of his hours worked. (Partridge Dep. Doc. # 45-1 at 41, 47). Kadury, on the other hand, explained that some records were created on these matters, but that he destroyed all of the records pertaining to Partridge's employment. (Kadury Dep. Doc. # 47-1 at 63, 74).

5

Kadury testified that he ultimately terminated Partridge because Partridge was "repeatedly drunk" and pulled a gun on a hotel guest. (<u>Id.</u> at 65-66).[2]   Kadury added during his deposition that he considered Partridge's drinking "a very serious problem." (<u>Id.</u> at 72).   Kadury described a holiday party at the Mosley Motel in which Kadury "physically had to remove [Partridge] because [] Partridge and his wife fought physically, like fighting, fighting outside.  I had to take him and calm him down and threaten him that if he's not calming down and going to his room I have to fire him and kick him out of the motel." (<u>Id.</u>).

## II.  <u>Procedural History</u>

On April 20, 2015, Partridge filed a two-count Fair Labor Standards Act Complaint seeking unpaid minimum wages and unpaid overtime compensation from Mosley Motel, Affordable Realty, and Kadury. (Doc. # 1). Partridge filed an Amended Complaint under the FLSA on June 30, 2015. (Doc. # 33). Mosley Motel and Affordable Realty jointly filed their answer and affirmative defenses on July 14, 2015. (Doc. # 35). Kadury also filed his answer and affirmative defenses on July 14, 2015. (Doc. # 36).

On October 30, 2015, Affordable Realty filed its Motion

---

[2] Partridge maintains that, rather than being fired, he quit on his own volition. (Partridge Dep. Doc. # 45-1 at 33).

for Summary Judgment seeking an Order that it is not Partridge's employer under the FLSA. (Doc. # 44). On October 31, 2015, Mosley Motel and Kadury jointly filed a Motion for Summary Judgment to determine Partridge's employment status, either as an independent contractor or employee. (Doc. # 46). In addition, Partridge has filed a Motion for Partial Summary Judgment to determine the following: (1) whether Partridge was an employee of Mosley Motel; (2) whether Kadury is individually liable for unpaid minimum and overtime wages; (3) whether Mosley Motel was an enterprise engaged in commerce as defined by the FLSA; (4) whether Defendants violated the record keeping provisions of the FLSA; and (5) whether Defendants are entitled to wage set-off towards Partridge's minimum wage and overtime wage recovery. (Doc. # 48). As previously stated, all Motions are ripe for the Court's review.

As explained below, the Court grants Partridge's Motion and denies the Motion filed by Affordable Realty as well as the Motion jointly filed by Mosley Motel and Kadury.

## III. **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to

defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc. 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations

8

or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988). (citing <u>Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981)

IV. **<u>Analysis</u>**

A. **<u>Employee vs. Independent Contractor Status</u>**

The FLSA's overtime provisions apply to employees, but not independent contractors. <u>Perdomo v. Ask 4 Realty & Mgmt, Inc.</u>, 298 F. App'x 820, 821 (11th Cir. 2008). "A determination of employment status under the FLSA . . . is a question of law." <u>Id.</u> In determining whether an individual is an employee, instead of an independent contractor, courts apply the "economic realities" test. <u>Scantland v. Jeffry Knight, Inc.</u>, 721 F.3d 1308, 1311-12 (11th Cir. 2013). This test

9

requires the Court to "look past the labels the parties apply to their relationship, and to examine both whether Plaintiff's relationship to Defendant is that of a traditional employee and to what extent Plaintiff is economically dependent upon Defendants." <u>Castro v. Sevilla Props., LLC</u>, No. 13-cv-22466, 2013 U.S. Dist. LEXIS 181210, at *6 (S.D. Fla. Dec. 30, 2013).

In the Eleventh Circuit, courts consider the following factors in determining an individual's employment status:

(1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;

(2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;

(3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;

(4) whether the service rendered requires a special skill;

(5) the degree of permanency and duration of the working relationship; and

(6) the extent to which the service rendered is an integral part of the alleged employer's business.

<u>Scantland</u>, 721 F.3d at 1312.  No one factor is outcome determinative, nor is the list exhaustive. <u>Id.</u> "Ultimately, in considering economic dependence, the court focuses on whether an individual is 'in business for himself' or is 'dependent upon finding employment in the business of others.'" <u>Id.</u> (citing <u>Mednick v. Albert Enters., Inc.</u>, 508 F.2d 297, 301-02 (5th Cir. 1975)).

Mosley Motel and Kadury have filed a very brief Motion

for Summary Judgment (Doc. # 46).  The Motion is not organized into helpful subheadings, nor do these Defendants provide a concise statement of the issues on which they seek relief. Instead, at the conclusion of the Motion, Defendants request that the Court "grant their Motion For Summary Judgment, plus such other and further relief as this Court deems reasonable." (Doc. # 46 at 5).  The only issue that Kadury and Mosley Motel briefed in the Motion with any specificity is whether Partridge was an employee or an independent contractor.  That issue has also been raised by Partridge in his Motion for Partial Summary Judgment, among other issues.  As discussed below, the Court's consideration of the relevant factors leads to the determination that Partridge was an employee and not an independent contractor.

### 1.   **Nature and Degree of Control**

"The economic reality inquiry requires [the court] to examine the nature and degree of the alleged employer's control, not why the alleged employer exercised such control." Scantland, 721 F.3d at 1316.  The Eleventh Circuit has found that the following factors, among others, are relevant to the control inquiry: "whether the alleged employer (1) had the power to hire and fire the employee, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined the rate and method of payment, and

11

(4) maintained employment records." <u>Villarreal v. Woodham</u>, 113 F.3d 202, 205 (11th Cir. 1997).

The application of these factors and others militates in favor of finding that Partridge was an employee.  Kadury had the power to hire and to fire Partridge, and placed no limitations on those rights by contract "as would often be the case in dealing with an independent contractor and a contractual clause imposing liability or a penalty for cancellation of the work." <u>Solis v. A+ Nursetemps, Inc.</u>, No. 5:07-cv-182, 2013 U.S. Dist LEXIS 49595, at *18 (M.D. Fla. Apr. 5, 2013).

Partridge was also subject to extensive control by Kadury with respect to his assigned tasks and work schedule. (Partridge Dep. Doc. # 45-1 at 23-27). Kadury scheduled Partridge to work weekdays and weekends. (<u>Id.</u> at 45). Partridge was also expected to be on-call, to check a maintenance log, and he even carried a radio. (<u>Id.</u> at 23). Rather than coming and going as he pleased, Partridge was expected to abide by Kadury's work schedule.

In <u>Solis</u>, 2013 U.S. Dist. LEXIS 49595 at *18, the court observed that "[i]n an independent contractor relationship, the independent contractor normally has at least an equal say in the rate to be charged for particular work by bidding on the job or by posting or advertising standard rates for the

work to be performed." Here, by contrast, Partridge was paid by a flat rate (starting at $100 per week and, after two raises, $150 per week). (Partridge Dep. Doc. # 45-1 at 27, 54). Partridge did not have any say in the amount that he was paid. (Id. at 21).

In addition to controlling the manner in which Partridge was hired, paid, and scheduled to work, the record also reflects that Kadury had Partridge follow another employee, Richard Petry, for training purposes. (Id. at 23). "The provision of training [] indicates an employee-employer relationship . . . [and] the non-provision of training indicates an independent contractor relationship." Robles v. RFJD Holding Co., Inc., No. 11-cv-62069, 2013 U.S. Dist. LEXIS 77524, at *13-14 (S.D. Fla. June 3, 2013). Here, Partridge worked hand-in-hand with Petry for the first two months of his employment to learn the tasks and expectations. (Partridge Dep. Doc. # 45-1 at 23). While Partridge had some experience in handy work, he was self taught and relied on Petry and Kadury for guidance. (Id.).

Although "an employer does not need to look over his workers' shoulder every day in order to exercise control," it appears that Kadury did exactly that in this case. Robles, 2013 U.S. Dist. LEXIS 77524, at *14. Kadury hired Partridge, dictated his duties and his schedule, set his pay, and

13

provided training through Petry.  The control Kadury exercised over Partridge was significant, rather than de minimis, and militates in favor of finding employee status.

### 2.   Opportunity for Profit or Loss

Courts may find independent contractor status when a worker is able to garner additional income or profit through the exercise of managerial skill or increased efficiency in the manner or means of accomplishing the work. See Scantland, 721 F.3d at 1316-17. "The opportunity for profit and loss has more to do with relative investments, with control over larger aspects of the business, and with like forms of initiative." Harrell v. Diamond A Entm't, 992 F. Supp. 1343, 1351 (M.D. Fla. Nov. 28, 1997).

There is no indication in the record that Partridge had the opportunity to earn additional income or profit through the exercise of managerial skill or increased efficiency. Once Partridge was established as a Motel maintenance man, he was paid a flat rate.  His pay was not based on his efficiency and the record does not reflect that Partridge exercised managerial skills during his tenure at the Motel. In addition, Partridge neither made an investment in Mosley Motel nor faced a loss.  See Sakasci v. Quicksilver Delivery Sys., No. 8:06-cv-1297, 2007 U.S. Dist. LEXIS 88747, at *22 (M.D. Fla. Nov. 28, 2007)("because [defendant] controlled the factors

14

primarily responsible for determining its [workers'] earnings, this factor weights in favor of finding an employment relationship"); <u>Molina v. S. Fla. Express Bankserv, Inc.</u>, 420 F. Supp. 2d 1276, 1286 n.28 (M.D. Fla. 2006) (stating that when a business controls the primary factors governing its workers' earnings, employee status is suggested). Upon due consideration, the Court determines that this factor weighs in favor of finding an employer-employee relationship.

### 3.   <u>Relative Investments of the Parties</u>

Courts may find independent contractor status when a worker invests in equipment or materials required for completing his tasks, or hires other workers to assist him in the completion of his tasks. <u>Scantland</u>, 721 F.3d at 1317. Here, Partridge did not make any such investment. <u>See also Demers v. Adams Homes of NW Fla., Inc.</u>, No. 6:06-cv-1235, 2007 U.S. Dist. LEXIS 82797 (M.D. Fla. Nov. 7, 2007) (that defendant paid for the majority of plaintiff's supplies weighed in favor of an employer-employee relationship).

There is no indication that Partridge provided supplies or tools (with the exception of his personal drill) so as to support a finding of independent contractor status. Partridge primarily utilized the equipment and supplies provided by Kadury. (Partridge Dep. Doc. # 45-1 at 10, 62-63). The Court compares such nominal and de minimis outlay with Defendants'

substantial investments (including supplies to maintain a motel with over 100 rooms) and concludes that this factor strongly favors employee status for Partridge. See Harrell, 992 F. Supp. at 1350 (considering the employer's "material expenditures," which included "advertising, facilities, maintenance, etc.").

### 4.    Special Skill Required to Perform the Job

"A lack of specialization indicates that an individual is an employee, not an independent contractor." Molina, 420 F. Supp. 2d at 1286. Further, "[r]outine work which requires industry and efficiency is not indicative of independence and nonemployee status." Usery v. Pilgrim Equip. Co., 527 F.2d 1308, 1314 (5th Cir. 1976). "Finally, even if an individual has specialized skills, that is not indicative of independent contractor status where the individual does not use those skills in an independent fashion." Molina, 420 F. Supp. 2d at 1286.

Partridge testified that he does not have a license, dropped out of school in the tenth grade, and that he is a self-taught maintenance man. (Partridge Dep. Doc. # 45-1 at 11). Partridge carried out various tasks that did not require a specialized skill, such as sweeping, cleaning pool filters, power washing the motel grounds, moving furniture around, and letting locked out guests into their rooms. When Kadury asked

Partridge to complete tasks that required more specialized knowledge, Partridge would have to call an electrician, plumber or A/C repair man. (Kadury Dep. Doc. # 47-1 at 58). Partridge was not required to perform any specialized tasks. In addition, he did not have a business license or carry occupational insurance and does not have a high school diploma. (Partridge Dep. Doc. # 45-1 at 11). Thus, this factor weighs in favor of finding employee status as to Partridge.

### 5.   **Permanency and Duration of Relationship**

In <u>Clincy v. Galardi S. Entertainers</u>, 808 F. Supp. 1326, 1348 (N.D. Ga. 2011), the court indicated that a working relationship of less than one year is "transient or itinerant" and signaled independent contractor status. Partridge worked exclusively at the Mosley Motel from November of 2012, through April of 2014, approximately 17 months. (Partridge Dep. Doc. # 45-1 at 31). The duration of Partridge's employment accordingly supports finding that he was an employee, rather than an independent contractor. In addition, nothing in the record suggests that a temporal limitation was placed on Partridge's employment. Rather, Partridge's working relationship ended only after he was accused of threatening a Motel guest with a gun. Thus, the Court determines that this factor favors employee status.

17

### 6. __Integral Services__

Finally, the Court considers the extent to which Partridge's services were an integral part of the Mosley Motel. Partridge provided numerous services from personally assisting guests that were locked out of their rooms, to helping remediate bed bug infestations, to fixing leaking toilets. He also assisted the housekeeper, power washed the grounds, and provided a long list of other services as detailed above. The Court finds that these services were integral to Mosley Motel.

"Generally, the more integral the work, the more likely the worker is an employee, not an independent contractor." Robles, 2013 U.S. Dist. LEXIS 77524, at *23. (internal citation omitted). Under the facts presented, the Court determines that this factor also weighs in favor of finding employee status.

### 7. __Examining the Record as a Whole__

In determining whether an employer-employee relationship existed, "[n]o one factor is determinative;" "each factor should be given weight according to how much light it sheds on the nature of the economic dependence of the putative employee on the employer." Perdomo, 298 F. App'x 821; see also Usery, 527 F.2d at 1311 ("No one of these considerations can become the final determinant, nor can the collective answers to all

of the inquires produce a resolution which submerges consideration of the dominant factor – economic dependence."); Benshoff v. City of Va. Beach, 180 F.3d 136, 141 (4th cir. 1999) ("The employer-employee relationship does not lend itself to rigid per se definitions, but depends upon the circumstances of the whole activity.").

Here, each of the relevant factors considered in the Court's calculus supports finding Partridge was an employee rather than an independent contractor. The Court accordingly grants Partridge's Motion for Summary Judgment and denies Mosley Motel and Kadury's Motion for Summary Judgment to the extent that it finds Partridge was an employee entitled to the protections of the FLSA.

**B. Kadury may be Held Individually Liable under the FLSA**

Under the FLSA, a plaintiff may sue an individual employer or multiple employers. Kendrick v. Eagle Int'l Group, LLC, No. 8-80909-CIV, 2010 WL 1257674, at *3 (S.D. Fla. May 26, 2010). "The FLSA contemplates that there may be several simultaneous employers who are responsible for compliance with the FLSA." Id. (citing Falk v. Brennan, 414 U.S. 190, 195 (1973)). However, an individual cannot be held personally liable for violating the overtime provision of the FLSA unless he is an "employer" as that term is defined by the Act. Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515

F.3d 1150, 1160 (11th Cir. 2008).  The Act broadly defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

Partridge seeks entry of summary judgment on the issue of whether Kadury may be held individually liable for any FLSA violations that may be found in this case.  Defendants, on the other hand, argue that Kadury cannot be considered an "employer" under the FLSA because he is neither an officer nor director of the Mosley Motel and was merely a manager. The Court finds Defendants' argument unpersuasive.

"Controlling Eleventh Circuit precedent mandates that the issue of whether the defendant is an employer is a question of law, 'with the subsidiary findings being issues of fact.'" Vondriska v. Cugno, No. 8:07-cv-1322-T-24-TGW, 2010 WL 3245426, at *2 (M.D. Fla. Aug. 17, 2010)(quoting Patel, 803 F.2d 632, 634 n.1 (11th Cir. 1986)). "The subsidiary findings of fact are made by 'entertaining and assessing the evidence relevant to the inquiry called for by a given factor . . .' and in doing so, 'the court is, in effect, conducting a miniature bench trial.'" Id. (quoting Martinez-Mendoza v. Champion Int'l Corp., 340 F.3d 1200, 1209 & 1209 n.27 (11th Cir. 2009)).  "Ultimately, the answers to the individual inquiries are viewed together and the Court must determine,

20

from those answers, whether the [employees] established [the putative employer's employer] status by a preponderance of the evidence - a question of law." Id. (internal quotations omitted).

The Supreme Court has emphasized the "expansiveness" of the FLSA's definition of employer. Falk, 414 U.S. at 195 (1973). "Courts consistently have held that the term 'employer' is not limited to the narrow or technical concepts of employment but rather is given a broad meaning to carry out the purpose of the Act." Brock v. VAFLA Corp., 668 F. Supp. 1516, 1520 (M.D. Fla. 1987)(citations omitted); see also Alvarez Perez, 515 F.3d at 1160 ("[W]hether an individual falls within this definition does not depend on technical or isolated factors but rather on the circumstances of the whole activity.")(citations omitted). Further, "the parameters of § 203(d) are sufficiently broad to encompass an individual who . . . acts, or has the power to act, on behalf of the corporation vis-a-vis its employees." Brock, 668 F. Supp. at 1520 (citations omitted).

In deciding whether a party is an employer, courts have often applied the "economic reality" test instead of common law concepts of agency. See Goldberg v. Whitaker House Coop., 366 U.S. 28, 33 (1961). "The economic reality test includes inquiries into whether the alleged employer (1) had the power

21

to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." <u>Villarreal v. Woodham</u>, 113 F.3d 202, 205 (11th Cir. 1997).

Kadury's own deposition testimony shows that he supervised the day-to-day operations of the Mosley Motel, prepared the weekly payroll, hired and fired employees (including Partridge), exercised control over Partridge's work hours and tasks, and directly supervised Partridge. (Kadury Dep. Doc. # 47-1 at 31). The following deposition excerpt is illustrative of Kadury's role at the Motel:

```
Q: Who supervises the office employees?
A: Myself.
Q: Who supervises the maintenance men?
A: Myself.
Q: Groundsmen?
A: Myself.
Q: Housekeeper?
A: I get the privilege to do that, too.
Q: Who can fire the office employees?
A: Either myself or Mr. Shimshoni.
Q: Have you ever fired anybody?
A: Oh yes.
Q: Who did you fire?
A: Harry [Partridge].
 . . .
Q: Who else have you fired?
A: Quite a few.  I cannot recall names right now.
There's quite a few.
 . . .
Q: Did you fire maintenance men?
A: Yes, I did.
Q: Did you fire groundsmen?
A: Yes, I have.
Q: And you've fired housekeepers?
```

```
A: Yes, I have.
Q: Did you ever fire an office employee?
A: Yes, I have.
```

(Id. at 31-32).    This  evidence  brings  Kadury  within  the definition of an employer under the FLSA.

The  Court  finds  support  for  this  determination  in numerous  other  cases.    In  Brock,  for  example,  the  court imposed personal liability for FLSA violations on an amusement park general manager who oversaw the operation of the park on a  day-to-day  basis,  determined  the  duties  of  employees, occupied  an  office  in  which  payroll  records  and  records  of hours  were  maintained,  and  discussed  personnel  matters  with the  corporation's  directors.    Brock,  668  F.  Supp.  at  1517. The court concluded that it was clear the individual defendant "acted directly and indirectly in the interest of defendant [] Corporation in relation to its employees."    Id.

Similarly,  in  Kendrick,  the  court  refused  to  dismiss  an FLSA claim against a company's sales manager where the manager oversaw the day-to-day operations of the office, required all employees  to  report  to  him  as  manager,  approved  leave requests, supervised and evaluated the plaintiff, and directed the  plaintiff  in  her  hours,  work,  and  job  duties. Kendrick, 2010 WL 1257674, at *3.

Based on the undisputed evidence and the analogous cases discussed  herein,  this  Court  finds  that  Kadury's

23

responsibilities as manager of Mosley Motel are sufficient to hold him individually liable under the FLSA's expansive definition of an "employer." Therefore, the Court grants Partridge's Motion for Summary Judgment on this point.[3] In the event that a violation of the FLSA is found in this case, Kadury may be held individually liable to Partridge for the damages.

### C.   __Affordable Realty as a Joint Employer__

Along the same lines, Affordable Realty seeks a summary judgment finding that it is not Partridge's employer under the FLSA. The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). An entity "employs" a person under the FLSA if it "suffer[s] or permit[s]" the individual to work. Id. at § 203(g). An employee may have more than one employer. See 29 C.F.R. § 791.2(a). "A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case." Id. A joint-employment

---

[3] As noted, the Motion for Summary Judgment filed by Mosley Motel and Kadury (Doc. # 46) is not detailed nor is it presented in such a way that the Court can ascertain the arguments contained therein. To the extent Kadury's potential liability under the FLSA may be raised in that Motion, the Court denies the Motion.

relationship will generally be found to exist in situations such as:

> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or
>
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b).

Here, there is a genuine issue of material fact regarding whether Affordable Realty can be considered Partridge's joint employer along with Mosley Motel. Affordable Realty has filed various affidavits in which its management personnel and shareholders have attested that Affordable Realty does not share employees with Mosley Motel. (Shimshoni Aff. Doc. # 44-1 at ¶ 6; Mosley Aff. Doc. # 44-2 at ¶ 7; Portnoy Aff. Doc. # 44-3 at ¶ 7). Notably, the affidavits do not disclaim the existence of an employment relationship with Partridge. In addition, Avi Portnoy, the sole shareholder of Affordable Realty, has sworn that Affordable Realty does not own any warehouses, but rather that it owns apartment buildings and other residential holdings. (Portnoy Aff. Doc. # 44-3 at ¶

9).

On the other hand, Partridge submits in a declaration that while he was working for Mosley Motel, Kadury instructed him on numerous occasions to perform work at a warehouse that was owned by Affordable Realty. (Partridge Decl. Doc. # 51-1 at ¶ 10). This constitutes a genuine dispute of material fact that cannot be resolved at the summary judgment stage. The Court must avoid weighing conflicting evidence or making credibility determinations on summary judgment. Anderson, 477 U.S. at 249. Rather, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. The Court is prohibited from making a credibility determination at this procedural juncture and accordingly denies Affordable Realty's Motion for Summary Judgment.

### D. **Enterprise Coverage under the FLSA**

In order to be eligible for FLSA overtime, an employee must demonstrate that he is covered by the FLSA. Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1299 (11th Cir. 2011). In order to demonstrate FLSA coverage, an employee must show "individual coverage" -- "that they were engaged in commerce or in the production of goods for commerce," or "enterprise coverage" -- that the defendant employer is an enterprise engaged in commerce. See 29 U.S.C.

26

§ 207(a)(1).   In this case, Partridge asserts enterprise

coverage as to the Mosley Motel.   At this juncture, Partridge

seeks a summary judgment determining that Mosley Motel is an

enterprise employer covered by the FLSA.

> An employer falls under the enterprise coverage
> section of the FLSA if it (1) has employees engaged
> in commerce or in the production of goods for
> commerce, or that has employees handling, selling,
> or otherwise working on goods or materials that
> have been moved in or produced for commerce by and
> person and (2) has at least $500,000 of annual
> gross volume of sales made or business done.

Polycarpe v. E&S Landscaping Serv., Inc., 616 F.3d 1217, 1220

(11th Cir. 2010)(citing 29 U.S.C. § 203(s)(1)(A).

It is undisputed that the $500,000 threshold has been met

in this case. (Shimshoni Dep. Doc. # 48-1 at 10).   The dispute

outlined by the parties concerns whether the Mosley Motel is

an enterprise that "has employees engaged in commerce."   For

an employee to be "engaged in commerce" under the FLSA, that

employee must be directly participating in the actual movement

of persons or things in interstate commerce by (1) working for

an instrumentality of interstate commerce (for example,

transportation or communication industry) or (2) by regularly

using the instrumentalities of interstate commerce in his work

(for example, regular and recurrent use of interstate

telephone, mails, or travel. See 29 C.F.R. § 776.23(d)(2);  29

C.F.R. § 776.24; Opinion Letter, FLSA, 1999 WL 1002373 (Mar.

5, 1999)("Such employees include those who regularly handle

27

interstate mail and telephone calls, engage in banking or credit card transactions, or receive or handle goods or materials from or destined for out-of-state sources.").

Kadury testified that the Motel employs two front desk employees who make work related telephone calls, conduct credit card transactions, and utilize facsimiles. (Kadury Dep. Doc. # 47-1 at 25-26). In addition, the Motel has a website and a cellular telephone. (Id. at 26-27). From these undisputed facts, the Court grants Partridge's Motion for Partial Summary Judgment to the extent it determines that Mosley Motel is an enterprise covered under the FLSA.

### E. **Violation of FLSA Record Keeping Requirements**

A covered FLSA employer must "make, keep, and preserve" records for each employee's "wages, hours, and other conditions and practices of employment." 29 U.S.C. § 211(c). Specifically, employers must record and preserve, for each employee, the "hours worked each workday and total hours worked each workweek" as well as other administrative records. 29 C.F.R. § 516.2(7).

Kadury testified that he did not keep records of the cash payments made to workers such as Partridge. (Kadury Dep. Doc. # 47-1 at 42). He also explained that there were some records created regarding the tasks Partridge completed, but the records were disposed of: "I never kept anything. As long as

28

everything went fine . . . I didn't need it anymore." (<u>Id.</u> at
53). When asked, "Are there any records that reflect the
amount of hours Mr. Partridge worked for the motel," Kadury
responded: "No" and that he had "not a clue" as to how many
hours Partridge worked per week. (<u>Id.</u> at 63). Kadury also
mentioned that a report was created with respect to
Partridge's alleged gun incident, but that he did not keep
that report. (<u>Id.</u> at 74). Similarly, Michael Shimshoni, the
Vice President of Mosley Motel, answered "no" when asked: "Do
any records exist reflecting the amount of hours [Partridge]
worked?" (Shimshoni Dep. Doc. # 48-1 at 57). Based on this
uncontroverted testimony, the Court grants Partridge's Motion
for Partial Summary Judgment with respect to Mosley Motel's
violation of the record keeping provision of the FLSA.

### F.   <u>Wage Set-Off Documentation</u>

In <u>Donovan v. New Floridian Hotel, Inc.</u>, 676 F.2d 468
(11th Cir. 1982), the court explained that Section 3(m) of the
FLSA "allows employers to include the reasonable cost of
servicing meals, lodging, or other facilities in employee
wages for purposes of the FLSA." <u>Id.</u> at 474. And, "when
calculating the amount of back wages due to an employee under
the FLSA . . . the employer is entitled to a credit for the
reasonable cost of providing the meals and lodging." <u>Id.</u>
However, in order to receive this benefit, the employer must

maintain and preserve contemporaneous records substantiating the cost of furnishing lodging as well as other comprehensive records "showing additions or deductions from wages paid for boarding, lodging, or other facilities on a work week basis." 29 C.F.R. § 516.27(a); Donovan, 676 F.2d at 474.

In this case, none of the Defendants have come forward with documents pertaining to any deductions made from Partridge's compensation, nor have Defendants even hinted at the existence of any documents regarding the cost of furnishing lodging to Partridge, so as to take advantage of Section 3(m) of the FLSA.  In addition, Defendants' blase statement that the lodging was "valued at $265 per week" is unavailing because the record shows that $265 was the amount charged to the public to rent the room weekly (such that Defendants could profit from the rental). (Doc. # 46 at 2). See e.g. Hassinger v. Sun Way Enters., Inc., 6:12-cv-1052-Orl-28GJK, 2014 U.S. Dist. LEXIS 73325, at *31 (M.D. Fla. May 29, 2014)("reasonable cost is not more than the actual cost to the employer of the board, lodging or other facilities and reasonable cost does not include a profit to the employer or any affiliated person.")(internal citations omitted); Davis Brothers, Inc. v. Donovan, 700 F.2d 1368, 1371 (11th Cir. 1983)("The credit is not for the retail value of the meals, but is limited to reasonable cost to the employer of providing

30

the meals."). Because Defendants failed to meet the record keeping requirements of 29 C.F.R. § 516.27, Defendants cannot use the cost of the furnished lodging to reduce or offset Partridge's minimum wage or overtime recovery, if any. Partridge's Motion for Summary Judgment is accordingly granted.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Affordable Realty and Property Management, Inc.'s Motion for Summary Judgment (Doc. # 44) is **DENIED.**

(2) Mosley Motel of Saint Petersburg, Inc. and Al Kadury's Motion for Summary Judgment (Doc. # 46) is **DENIED.**

(3) Harry Partridge's Motion for Partial Summary Judgment (Doc. # 48) is **GRANTED.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>6th</u> day of January, 2016.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE